Argued and submitted December 11, 1992, affirmed August 25, 1993

UNITED SERVICES
AUTOMOBILE ASSOCIATION,
a Texas corporation,
*Respondent,*

*v.*

William H. REILLY
and Michael B. Reilly,
*Defendants,*

*and*

Marvin E. NYGAARD,
*Appellant.*

(9008-05010; CA A71742)

858 P2d 457

Cathy E. Smith, Portland, argued the cause for appellant. With her on the briefs were Lauren M. Underwood and Underwood, Norwood & Hiefield, Portland.

Debra L. Anderson, Portland, argued the cause for respondent. With her on the brief were Lee Aronson and Schulte, Anderson, DeFrancq, Downes & Carter, P.C., Portland.

Before Rossman, Presiding Judge, and De Muniz and Leeson,* Judges.

ROSSMAN, P. J.

---

* Leeson, J., *vice* Buttler, J., retired.

## ROSSMAN, P. J.

■     In this declaratory judgment action, defendant Nygaard appeals, assigning error to the trial court's grant of summary judgment for plaintiff, United Services Automobile Association (USAA). We affirm.[1]

USAA issued a motor vehicle liability policy to defendant Reilly,[2] which became effective on February 1, 1988, and remained effective until August 1, 1988. The policy contained the following "business use" exclusion:

"A.    We do not provide liability coverage for any person:

"* * * * *

"6.    While employed or otherwise engaged in the business or occupation of:

"* * * * *

"e.    parking

"vehicles designed for use mainly on public highways. * * * This exclusion does not apply to ownership, maintenance or use of **your covered auto**." (Boldface in original.)

On July 12, 1988, Reilly was working as a valet parking attendant for a grocery store. He struck Nygaard, a pedestrian, while parking a customer's car. Nygaard subsequently filed an action against Reilly, seeking recovery of damages for personal injuries sustained as a result of the accident.

USAA then brought this action, seeking a declaratory judgment that it was not obligated to defend or indemnify Reilly for any claims arising out of the accident. It argued that, at the time of the accident, Reilly was "engaged in the business or occupation" of parking cars and, therefore, was not covered by the policy. The trial court agreed and granted summary judgment to USAA.

---

[1] USAA contends that Nygaard cannot obtain review because he was not a party to the insurance contract and because he did not preserve any error below. We disagree. Because Nygaard was a party to the declaratory judgment proceeding and is a potential judgment creditor of USAA, he may challenge the court's ruling concerning the scope of the policy's coverage on appeal. *See Progressive Casualty Ins. Co. v. Marca*, 99 Or App 489, 492, 783 P2d 19 (1989); *Viking Ins. Co. v. Petersen*, 96 Or App 46, 49-50, 771 P2d 1022, *aff'd in part, rev'd in part on other grounds*, 308 Or 616, 784 P2d 437 (1989).

[2] Reilly is not a party on appeal.

■■   On appeal, Nygaard contends that the trial court erred in granting summary judgment. He concedes that, on its face, the "business use" exclusion is unambiguous and excludes Reilly from coverage for the accident. He asserts, however, that the exclusion is void as contrary to Oregon's Financial Responsibility Law (FRL), ORS chapter 806, and the motor vehicle liability insurance statutes, ORS 742.449 to ORS 742.466.[3] USAA argues that the exclusion does not conflict with FRL and should be applied as written. On review, it is our task to determine whether, as a matter of law, FRL and the motor vehicle liability insurance statutes mandate coverage by USAA under these facts. ORCP 47.

ORS 806.060(1) sets out the general purpose of FRL:

"A person who is required to comply with the financial responsibility requirements of this state[4] *must be able to respond in damages * * * for liability on account of accidents arising out of the* ownership, *operation,* maintenance or use *of motor vehicles* and must establish that ability by one of the methods required by this section. * * *" (Emphasis supplied.)

Nygaard seizes on the emphasized language and asserts that the "business use" exclusion runs afoul of FRL, because it denies Reilly the ability to respond in damages where his "liability * * * arose out of his operation of a motor vehicle * * *." The problem with that argument is that it reads ORS 806.060 in complete isolation. When determining whether an insurance policy complies with FRL, one must remain mindful that ORS chapter 806 and the motor vehicle liability insurance statutes furnish "a comprehensive scheme under which both drivers and vehicle owners are required to have liability insurance or a permissible substitute therefor." *Viking Ins. Co. v. Perotti,* 308 Or 623, 628, 784 P2d 1081 (1989). An insurer's obligations under FRL can only be

---

[3] The current statutes are used throughout this opinion. Although some of the statutes have been renumbered and some have been slightly modified since this dispute arose, those changes are not relevant to the issues presented in this appeal.

[4] FRL has been interpreted to "require *every* motor vehicle liability insurance policy issued in this state to provide for statutory minimum limits of coverage." *Viking Ins. Co. v. Petersen,* 308 Or 616, 621, 784 P2d 437 (1989). (Emphasis supplied.)

ascertained by considering the entire legislative scheme concerning financial responsibility requirements for motor vehicle drivers, and not by reading one general statement of policy as if it stands alone and without context. *See State Farm Fire and Casualty Co. v. Jones,* 306 Or 415, 418, 759 P2d 271 (1988).

■ As mentioned, FRL requires motor vehicle drivers to obtain either motor vehicle liability insurance or a permissible substitute therefor. ORS 806.060. When an insurance policy is obtained to satisfy FRL, the policy must provide the coverage required by ORS 742.450,[5] ORS 806.070,[6] and ORS 806.080. *See Viking Ins. Co. v. Perroti, supra,* 308 Or at 631; *Viking Ins. Co. v. Petersen, supra* n 4, 308 Or at 619-21. Nygaard does not contend that USAA's policy fails to comply with ORS 742.450 or ORS 806.070. His position appears to be that the policy is deficient because it does not conform to the requirements of ORS 806.080.

■ ■ ORS 806.080 requires that an automobile liability policy designate the covered vehicle(s) and insure " 'against loss from the liabilities imposed by law for damages arising out of the ownership, operation, use or maintenance of [*designated*] vehicles.' " *Viking Ins. Co. v. Perotti, supra,* 308 Or at 630, *quoting* ORS 806.080(1).[7] (Emphasis supplied;

---

[5] ORS 742.450 provides, in pertinent part:

"(1) Every motor vehicle liability insurance policy issued for delivery in this state shall state the name and address of the named insured, the coverage afforded by the policy, the premium charged therefor, the policy period and the limits of liability.

"(2) Every motor vehicle liability insurance policy issued for delivery in this state shall contain an agreement or indorsement stating that, as respects bodily injury and death or property damage, or both, the insurance provides either:

"(a) The coverage described in ORS 806.070 and 806.080; or

"(b) The coverage described in ORS 806.270."

ORS 806.270(3) requires that the policy provide coverage *either* for all persons who use the designated vehicle or vehicles with the consent of the insured *or* for the insured while he or she is operating a non-owned motor vehicle. *See also Dixie Ins. Co. v. Quesenberry,* 103 Or App 60, 795 P2d 1107 (1990). Nygaard does not allege that USAA's policy violates ORS 806.270.

[6] ORS 806.070(2) specifies the minimum coverage required.

[7] ORS 806.080(1) provides:

"A motor vehicle liability insurance policy used to comply with financial responsibility requirements under ORS 806.060 must meet all of the following requirements:

brackets in original.) ORS 806.080 does not require that a policy offer protection for liability arising from the operation of a vehicle that is *not* designated in the policy. Nygaard concedes that the vehicle Reilly was driving at the time of the accident was not a "designated" vehicle. Consequently, USAA was not statutorily required to afford coverage to Reilly while driving that vehicle. Assuming that USAA's policy covered Reilly when operating a non-designated vehicle,[8] such coverage was voluntary and in addition to the statutory mandate. As a result, USAA was free to limit that coverage by any lawful exclusion. *Collins v. Farmers Ins. Co.*, 312 Or 337, 342-43, 822 P2d 1146 (1991); ORS 742.464.[9] Because the "business use" exclusion only limits coverage that is in excess of that required by FRL[10] and is not otherwise prohibited by law, it is valid and enforceable. *Collins v. Farmers Ins. Co., supra*, 312 Or at 342-43.

Finally, it is necessary to address Nygaard's assertion that the definition of "insured vehicle" in the uninsured

---

"(a) It must be a policy or part of a policy designating, by explicit description or by appropriate reference, all motor vehicles for which coverage is provided by the policy.

"(b) It must insure the named insured and all other persons insured under the terms of the policy against loss from the liabilities imposed by law for damages arising out the ownership, operation, use or maintenance of *those motor vehicles*. * * *" (Emphasis supplied.)

As the Supreme Court recognized in *Perotti*, the reference to "those motor vehicles" unquestionably refers to the vehicles designated or described in the policy, *i.e.*, those vehicles named or described in the declarations. *Viking Ins. Co. v. Perotti, supra*, 308 Or at 630.

[8] USAA's policy was not included in the record. Consequently, we have not had the opportunity to review it to ascertain whether it provides coverage to Reilly in this situation.

[9] ORS 742.464 provides, in part:

"Any policy which grants the coverage required for a motor vehicle liability insurance policy under ORS 742.450, 806.080 and 806.270 may also grant any lawful coverage in excess of or in addition to the required coverage, *and such excess or additional coverage shall not be subject to the provisions of* ORS 742.031, 742.400 and *742.450 to 742.464. With respect to a policy which grants such excess or additional coverage only that part of the coverage which is required by ORS 806.080 and 806.270 is subject to the requirements of those sections.*" (Emphasis supplied.)

[10] By its own terms, the "business use" exclusion does not apply when the insured is operating a designated vehicle.

motorist coverage statutes, ORS 743.504(2)(b),[11] applies to FRL and requires that the USAA policy cover Reilly under the circumstances of this case. Nygaard reasons that, because the definition in ORS 743.504(2)(b) was held to apply to the personal injury protection (PIP) law, *see Utah Home Fire Ins. Co. v. Colonial Ins. Co.*, 300 Or 564, 715 P2d 1112 (1986), it also applies to FRL. What Nygaard overlooks is the fact that the PIP law, as interpreted in *Utah Home Fire Ins. Co.*, expressly requires that motor vehicle liability policies provide PIP benefits for certain individuals injured in an accident involving "the insured motor vehicle." ORS 743.520.[12] In *Utah Home Fire Ins. Co.*, the Supreme Court observed that the PIP law does not define the phrase "the insured motor vehicle" and that the meaning of that phrase is not readily apparent from the statute. After an extensive analysis of legislature history and an examination of the statutory scheme involving motor vehicle liability insurance, the Supreme Court concluded that the legislature intended the definition of "insured vehicle" in ORS 743.504(2)(b) to be applicable to the PIP law. 300 Or at 571-72.

■     However, in this case, there is no need to resort to the uninsured motorist coverage statutes or any tools of statutory construction to ascertain legislative intent. As previously discussed, ORS 806.080 clearly requires only that the policy insure against liability arising from the ownership, operation, use or maintenance of vehicles designated or described in the policy. *See* n 8, *supra; Viking Ins. Co. v. Perotti, supra*, 308 Or at 630. Unlike the PIP law, FRL does not mention "the

---

[11] ORS 742.504(2)(b) defines the "insured vehicle" as:

"(A) The vehicle described in the policy or a newly acquired or substitute vehicle, as each of those terms is defined in the public liability coverage of the policy, insured under the public liability provisions of the policy; or

"(B) A nonowned vehicle operated by the named insured or spouse if a resident of the same household; provided the actual use thereof is with the permission of the owner of such vehicle and such vehicle is not owned by nor furnished for the regular or frequent use of the insured or any member of the same household."

[12] ORS 742.520(1) provides, in part:

"Every motor vehicle liability policy issued for delivery in this state that covers any private passenger motor vehicle shall provide personal injury protection benefits to the person insured thereunder, members of that person's family residing in the same household, passengers occupying *the insured motor vehicle* and pedestrians struck by *the insured motor vehicle*." (Emphasis supplied.)

insured motor vehicle," "insured vehicle," or any related form of those terms, and we are not at liberty to insert into the FRL statutes a term that the legislature has not. ORS 174.010.

In sum, we conclude that the "business use" exclusion does not violate FRL, because it permissibly limits coverage that is beyond that mandated by statute. In addition, the definition of "insured vehicle" in the uninsured motor vehicle statutes has no application to FRL. The trial court correctly granted summary judgment to USAA.

Affirmed.